**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

<table>
<tr>
<td>

Colin Winters,

                           Plaintiff,

    -v-

The State of New York, et al.,

                          Defendants.

</td>
<td>

2:24-cv-7420
(NJC) (ST)

</td>
</tr>
</table>

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Colin Winters, proceeding pro se, brings this action against The State of New York, the Honorable Judge Thomas A. Adams ("Judge Adams"), the Honorable Judge Christopher J. Coschignano ("Judge Coschignano") (together, "the State Defendants"); Davidson Fink LLP ("Fink"), Heather C.M. Rogers, Laura A. Burgess, and Richard N. Franco (together, "the Fink Defendants"); Steven J. Baum (together with the Fink Defendants, the "Law Firm Defendants"); and Anthony Charles Ciaccio (collectively, "Defendants") seeking damages for an alleged wrongful foreclosure of property located at 245 Stone St., Elmont, New York 11003 (the "Property"). (Am. Compl., ECF No. 26.)

Before the Court are four separate motions: (1) the State Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., (State Mot., ECF No. 41-1); (2) the Fink Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) (Fink Mot., ECF No. 57-1); (3) Ciaccio's Motion to Dismiss for failure to state a claim under Rule

1

12(b)(6) (Ciaccio Mot., ECF No. 58-1); and (4) Baum's Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) (Baum Mot., ECF No. 61) (collectively, the "Motions").

For the reasons discussed below, the Court grants Defendants' Motions and dismisses the Amended Complaint in its entirety.

## FACTUAL BACKGROUND

For purposes of resolving the pending Motions, the Court accepts as true the factual allegations in the Amended Complaint and draws all reasonable inferences in the Plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). In resolving a motion to dismiss, a court may consider documents that are attached to the complaint, incorporated by reference in the complaint, integral to the complaint, or otherwise the subject of judicial notice. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023). Thus, the Court takes judicial notice of the State Court docket in *Bank of New York Mellon v. Winters*, Index No. 003507/08, New York State Supreme Court, Nassau County.

On or about March 23, 2007, Winters executed a Mortgage in the amount of $403,750 with respect to the Property. (*See* Am. Compl., Ex. A, ("Mortgage"), ECF No. 26 at 58–59.)[1] Winters applied for a loan from non-party CIT Group/Consumer Finance, Inc. ("CIT Group"), but CIT Group never provided the loan or registered the promissory note to establish a security interest. (Am. Compl. at 42–44.) The Mortgage provides that the lender is CIT Group. (*See* Am. Compl., Ex. A, ECF No. 26 at 58–59.) On February 19, 2008, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for CIT Group assigned the Mortgage to non-party, The

---

[1] Because the Amended Complaint is not separated by paragraphs, the Court refers to the relevant electronic document filing system (ECF) pagination numbers throughout this Order.

Bank of New York Mellon ("Bank of New York"), acting as trustee for certificate holders of the CWABS, Inc., asset-backed certificates, Series 2007-BC3. (*See* Am. Compl. at 43; *id.*, Ex. B ("Assignment"), ECF No. 26 at 60.) The assignment was recorded on March 6, 2008. (*See id.*, Ex. K ("Notice of Pendency"), ECF No. 26 at 81.)

Approximately eighteen years ago, on February 25, 2008, Bank of New York, represented by Baum, commenced a foreclosure action (the "Foreclosure Action") against Winters in New York State Supreme Court, Nassau County ("State Court"). *See Bank of New York Mellon v. Winters*, Index No. 003507/08, Nassau County Supreme Court. On January 11, 2012, counsel from Fink was substituted as counsel for Bank of New York. (*See* Am. Compl. at 46; *id.*, Ex. I ("Consent to Change Attorney"), ECF No. 26 at 77.) On April 25, 2019, Judge Adams entered a judgment of foreclosure and sale against Winters. (*Id.* at 22; *see* Franco Decl., Ex. B ("Judgment of Foreclosure and Sale"), ECF No. 57-4.) Ciaccio was appointed Referee by Order of Reference entered May 16, 2022. (*See* Ciaccio Decl., Ex. A ("Order of Reference"), ECF No. 58-3 at 2.) On April 28, 2023, Bank of New York purchased the Property at the sale held by Ciaccio. (*See id.*, Ex. C ("Terms of Sale"), ECF No. 58-5 at 2–5.) On June 15, 2023, Ciaccio delivered the deed for the Property to Bank of New York, and the deed was subsequently recorded on August 29, 2023. (*Id.*, Ex. D ("Referee's Deed"), ECF No. 58-6 at 3–4.) Thereafter, Bank of New York initiated an eviction proceeding in Nassau County District Court—LT-000900-24/NA. (*See* Am. Compl., Ex. K ("Eviction Order"), ECF No. 26 at 83.) By decision dated June 7, 2024, Judge Coschignano granted summary judgment to Bank of New York and ordered a judgment of possession and warrant of eviction against Winters. (*See id.*) A warrant of eviction was executed on July 25, 2024. (Am. Compl. at 37.)

Prior to the commencement of the instant action, on July 18, 2024, Winters commenced an action against all of the same Defendants in this action, with the exception of the State of New York, in New York State Supreme Court, Nassau County, asserting many of the same claims asserted here, including wrongful foreclosure, violation of the FDCPA, breach of contract, slander of title and infliction of emotional distress (the "2024 State Action"). (*See Winters v. Rogers* Index No. 612651/2024, Nassau County Supreme Court; *see also* Logue Decl., Ex. A, ("2024 State Action Complaint"), ECF No. 41-6 at 25–26.) Additionally, the 2024 State Action asserted claims for violation of the Truth in Lending Act, 15 U.S.C. § 1601, violation of "Federal Trust and Lien Laws," and slander of credit; and sought compensatory and punitive damages, as well as an injunction "to have the alleged debt discharged." (*Id.* at 26–27.)

Following the commencement of the instant action, the Honorable Judge Thomas Rademaker ("Judge Rademaker") issued a March 24, 2025 Decision and Order granting Defendants' motion to dismiss Winters' complaint in the 2024 State Action with prejudice. (*See* Logue Decl., Ex. B ("2024 State Action Order"), ECF No. 41-7.) Specifically, Judge Rademaker found that the complaint's allegations were "speculative and conclusory and d[id] not rise to the level of being actionable," noting that "[p]roceeding pro se is not a license to pursue frivolous litigation." (*Id.* at 2–3.)

## PROCEDURAL HISTORY

Winters initiated this action on October 24, 2024 (Compl., ECF No. 1), and on November 4, 2024, sought a temporary restraining order ("TRO") and preliminary injunction to prevent eviction from the Property. (ECF No. 5.) The Court denied the request for a TRO and preliminary injunction on November 8, 2024, finding that Winters failed to demonstrate an entitlement to injunctive relief. (*See* Elec. Order, Nov. 8, 2024.)

On January 9, 15, and 29, 2025, respectively, Baum, the State Defendants, and Ciaccio submitted letters requesting a conference with the Court in anticipation of filing motions to dismiss the Complaint in this action. (*See* ECF Nos. 10, 23, 24.) On January 10, 2025, Winters filed a second motion for a TRO and preliminary injunction, again seeking to prevent his eviction. (ECF No. 12.) On January 22, 2025, the Court denied the second request for a TRO and preliminary injunction, citing the same deficiencies noted in its prior Order. (*See* Elec. Order, Jan. 22, 2025.) On January 30, 2025, in response to Baum and the State Defendants' pending requests to file motions to dismiss, the Court granted Winters an opportunity to amend the Complaint and set forth a briefing schedule for the anticipated motions. (*See* Elec. Order, Jan. 30, 2025.) On February 3, 2025, the Court waived its pre-motion conference requirement with respect to Ciaccio's letter seeking a conference in anticipation of filing a motion to dismiss. (*See* Elec. Order, Feb. 3, 2025).

On February 20, 2025, Winters filed an Amended Complaint. (Am. Compl., ECF No. 26.) The Amended Complaint brings fifteen claims: (1) violation of the Tucker Act, 28 U.S.C. § 1491; (2) violation of due process pursuant to 42 U.S.C. § 1983 ("Section 1983"); (3) fraudulent concealment; (4) violation of the Administrative Procedures Act of 1946; (5) conspiracy pursuant to 42 U.S.C. §§ 1985 ("Section 1985"), 1986 ("Section 1986"); (6) wrongful foreclosure; (7) lack of standing; (8) breach of contract; (9) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (10) slander of title; (11) wrongful eviction; (12) wire fraud; (13) "failure to establish agency"; (14) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*; and (15) infliction of emotional distress. (*See* Am. Compl. at 53–55.) The Amended Complaint alleges that Defendants conspired

to deprive Winters of the Property and seeks $250,000 in compensatory damages, $25 million in punitive damages, and unspecified equitable relief. (*Id.* at 55–56.)

On March 10, 2025, the Fink Defendants filed an Answer. (ECF No. 28.)

On April 16, 2025, pursuant to the Court's "bundling" procedure, the State Defendants filed their Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) ("State Mot."), Winters' opposition ("Opp'n State Mot.") (ECF No. 41-4), and a reply declaration executed by Toni E. Logue, counsel for the State Defendants ("Logue Decl.") (ECF No. 41-5).

On May 19, 2025, the Fink Defendants filed their Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) ("Fink Mot."), a declaration with supporting exhibits (ECF Nos. 57-2 through 57-6), Winters' opposition ("Opp'n Fink Mot.") (ECF No. 57-8), and a reply declaration executed by Richard N. Franco, counsel for the Fink Defendants ("Franco Decl.") (ECF No. 57-10).

On May 28, 2025, Ciaccio filed his Motion to Dismiss pursuant to Rule 12(b)(6) (Ciaccio Mot.), a declaration with supporting exhibits (ECF Nos. 58-2 through 58-7), Winters' opposition ("Opp'n Ciaccio Mot.") (ECF No. 58-10), and a reply declaration executed by Ciaccio ("Ciaccio Reply Decl.") (ECF No. 58-11).

On May 30, 2025, Baum filed his Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) (Baum Mot.), a declaration with supporting exhibits (ECF Nos. 60-1 to 60-5), Winters' opposition ("Opp'n Baum Mot.") (ECF No. 62), and Baum's reply brief ("Baum Reply") (ECF No. 63).

## LEGAL STANDARDS

This Court is required to construe pleadings "filed by pro se litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th

6

62, 67 (2d Cir. 2023).[2] "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019). Nevertheless, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 09-cv-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Russo v. United States*, No. 22-1869-cv, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024) (citing *Green v. Dep't of Educ. of the City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A court considers a Rule 12(b)(1) challenge before other arguments for dismissal because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and objections moot. *See Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v. City of New York*, No. 11-cv-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction."). When a party raises a facial challenge to the

---

[2] Unless otherwise indicated, referenced quotations omit all internal quotation marks, citations, footnotes, and alterations.

court's subject matter jurisdiction, "the plaintiff has no evidentiary burden"; the district court need only "determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). In assessing a facial challenge to standing, a court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

When a party has placed jurisdictional facts into dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," however, "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441–42 (2d Cir. 2022). When the extrinsic evidence "reveals the existence of factual problems," the plaintiff "will need to come forward with evidence controverting that presented by the defendant" regarding standing. *Lugo*, 114 F.4th at 87. "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243; *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017) (same). "[I]f the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," the plaintiffs "are entitled to rely" on the complaint's allegations. *Carter*, 822 F.3d at 57–58.

To avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Protection USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining if a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a

court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central School Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

The Amended Complaint centers around allegations that "[t]he State of New York committed real estate deed fraud when its employees and the B.A.R. member players failed to deliver the property deed to [Winters]" and "allowed the illegal mortgage lien to be placed against [Winters'] property." (Am. Compl. at 45.) It further claims that Bank of New York did not have standing to proceed in the Foreclosure Action because the alleged Assignment of the Mortgage was illegal. (*Id.* at 24, 39.) The Amended Complaint further challenges the authenticity and thus the validity of the Consent to Change Attorney form in the Foreclosure Action. (*Id.* at 47.) It maintains that the State Defendants and the Law Firm Defendants "conspired together" to conceal Bank of New York and its attorney's lack of standing, as well as the State Court's lack of jurisdiction to "illegally foreclose on [Winters'] property." (*Id.* at 4–5, 19.)

9

Defendants filed four separate motions to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). Specifically, the State Defendants move to dismiss the Amended Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction under Eleventh Amendment immunity, judicial immunity, *Rooker-Feldman*, and the *Younger* abstention and *Colorado River* doctrines, and in the alternative, under Rule 12(b)(6) for failure to state a claim. (*See* State Mot.) Baum and the Fink Defendants move to dismiss the Amended Complaint under Rule 12(b)(1) pursuant to the doctrines of *Rooker-Feldman*, as well as under Rule 12(b)(6) invoking res judicata, collateral estoppel, and failure to state a claim. (*See* Baum Mot; Fink Mot.) The Fink Defendants also seek the imposition of sanctions against Winters under Rule 11(b), Fed. R. Civ. P. (*See* Fink Mot. at 1–2.) Finally, Ciaccio moves to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim against him. (*See* Ciaccio Mot.)

For the reasons discussed below, the Court grants Defendants' Motions and dismisses the Amended Complaint in its entirety.[3]

## I.      Claims Against the State Defendants

The State Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction on the grounds that Winters' claims are barred by Eleventh Amendment immunity and judicial immunity.[4] (*See* State Mot. at 7–12.)

---

[3] Additionally, the Court denies the Fink Defendants' request for the imposition of sanctions. (*See* Fink Mot. at 1–2.) Rule 11(c) sanctions are not granted as a matter of course following a request for their imposition; the grant or denial of such sanctions lies in the district court's discretion. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004). Rule 11 requires that a motion for sanctions "be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). As the Fink Defendants have has not satisfied the procedural requirements for filing a sanctions motion, their request is denied.

[4] The State Defendants also move for dismissal pursuant to *Rooker-Feldman*, the *Colorado River* and *Younger* abstention doctrines, and on the basis that Winters' claims are time-barred. Because this Court lacks subject matter jurisdiction pursuant to Eleventh Amendment immunity and

For the reasons discussed below, the Court agrees.

### A.  Eleventh Amendment Immunity

A claim that is barred by sovereign immunity must be dismissed for lack of subject matter jurisdiction. *See Makarova*, 201 F.3d at 113 ("The doctrine of sovereign immunity is jurisdictional in nature . . . ."); *Morales v. New York*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014). To the extent that the Amended Complaint brings claims against the State of New York, as well as Judge Adams and Judge Coschignano in their official capacities as New York State judicial officers, the Court dismisses those claims for lack of subject matter jurisdiction pursuant to the doctrine of Eleventh Amendment immunity.[5]

The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens in federal court. *See, e.g., Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Under the sovereign immunity doctrine, as a general rule, entities shielded from suit "may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). The Eleventh Amendment thus "generally

---

judicial immunity, it need not address these other grounds for dismissal of the claims against the State Defendants.

[5] The Amended Complaint does not specify whether Winters is suing the State Court Judges in their official or individual capacities. Accordingly, the Court construes the claims as including both official and individual capacity claims. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529–30 (2d Cir. 1993) ("[T]he failure of a complaint to specify that claims against government officials are asserted against them in their individual capacities generally does not warrant an outright dismissal at the pleading stage . . . ."); *Harriram v. Fera*, No. 21-cv-3696, 2023 WL 2647856, at *7 (S.D.N.Y. Mar. 27, 2023) (applying *Ying Jing Gan*). To the extent that the Amended Complaint brings claims against the State Court Judges in their individual capacities, these claims are nevertheless barred by judicial immunity, *see* Discussion I.B. *infra*.

bars suits in federal court" against "non-consenting states." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015). Eleventh Amendment sovereign immunity applies not just to lawsuits filed in federal court against states themselves, but also to state officials acting in their official capacities, including state court judges. *See Chris H. v. New York*, 740 Fed. App'x 740, 741 (2d Cir. 2018) ("The Eleventh Amendment bars damages actions in federal court against a state and against state officials acting in their official capacities, unless the state waives sovereign immunity or Congress abrogates it.") (summary order). This bar applies to federal court suits against a state and its agents "regardless of the nature of the relief sought." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023), *cert. denied*, No. 22-1130, 2024 WL 674658 (U.S. Feb. 20, 2024); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim."); *see also Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d. 304, 316 (E.D.N.Y. 2014) ("[The] Eleventh Amendment bars all suits against states in federal court based on state law, regardless of the relief sought."). Accordingly, states and their agents and instrumentalities are immune from suits seeking monetary damages and injunctive relief, *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001), as well as declaratory relief, *Ashmore v. Prus*, 510 F. App'x 47, 48 (2d Cir. 2013) (citing *Pennhurst*, 465 U.S. at 100–01); *Manners v. New York*, 175 F.3d 1008, 1999 WL 96136 at *1 (2d Cir. 1999) (summary order).

Notwithstanding the Eleventh Amendment's bar to federal actions against states and their agents and instrumentalities, a plaintiff may sue a state official acting in their official capacity "for prospective, injunctive relief from violations of federal law" under the doctrine established by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908). *State Emps. Bargaining Agent*

12

*Coal. v. Rowland*, 494 F.3d 71, 94 (2d Cir. 2007). The *Ex parte Young* exception applies to a claim against a state official when the "complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)) (quotation marks omitted). The *Ex parte Young* exception does not apply if a plaintiff seeks declaratory relief that "would have the same effect as an award of damages against the state." *Williams v. Marinelli*, 987 F.3d 188, 197 (2d Cir. 2021) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)); *see also Bythewood v. New York*, No. 22-2542-cv, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) ("Retrospective declaratory relief cannot otherwise serve as an end run around the Eleventh Amendment's bar on retrospective awards of monetary relief."). The *Ex parte Young* exception extends only to violations of federal law, not state law. *See Pennhurst*, 465 U.S. at 120–21.

Here, the Amended Complaint's claims against the State Defendants are clearly barred by Eleventh Amendment immunity. First, the Eleventh Amendment precludes Winters' claims against the State of New York because New York has not waived its Eleventh Amendment immunity, *Gollomp*, 568 F.3d at 366, and Congress has not abrogated that immunity to claims brought under 42 U.S.C. §§ 1983, 1985, 1986, the civil RICO statute, or the FDCPA, which are the federal statutes under which Winters has brought claims against the State Defendants.[6] *See Barone v. Laws.' Fund for Client Prot.*, 2023 WL 1975783, at *2 (2d Cir. 2023) ("Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983."); *Chris*

---

[6] The Amended Complaint is unclear as to which claims are asserted against the State Defendants. That said, in light of Winters' pro se status, the Court has been overinclusive in its interpretation of which claims set forth in the Amended Complaint are brought against the State Defendants.

*H.*, 740 F. App'x at 741 (noting Congress did not abrogate state immunity for claims brought under Section 1985); *Finkelman v. N.Y. State Police*, No. 06-cv-8705, 2007 WL 4145456, at *3 (S.D.N.Y. Nov. 15, 2007) (same for Section 1986); *Perry v. Wright*, No. 12-cv-721, 2013 WL 950921, at *5 (S.D.N.Y. Mar. 8, 2013) ("Congress did not waive sovereign immunity by enacting the FDCPA."); *Moore v. City of New York*, No. 08-cv-2449, 2011 WL 795103, at *7 n.3 (E.D.N.Y. Feb. 28, 2011) ("Congress did not abrogate Eleventh Amendment protection when it passed the RICO statute . . . and New York State has not waived its sovereign immunity either from RICO claims." (citations omitted)).

Additionally, the Amended Complaint's claims against the individual State Court Judges are barred by Eleventh Amendment immunity as they are state officials acting in their official capacities. *See Chris H*, 740 Fed. App'x at 741; *Thomas v. Martin-Gibbons*, No. 20-3124, 2021 WL 2065892 (2d Cir. May 24, 2021) (summary order) (affirming dismissal of pro se Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity); *Napolitano v. Saltzman*, 315 F. App'x 351, 352 (2d Cir. 2009) (affirming dismissal of claims against state appellate judges in their official capacity pursuant to the Eleventh Amendment).

Further, the *Ex parte Young* exception does not apply to Winters' claims, as the Amended Complaint does not "allege[] an ongoing violation of federal law" or "seek[] relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618 ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" (citing *Verizon Md., Inc.*, 535 U.S. at 645 (2002) (brackets and internal quotation marks omitted).) In addition to

14

compensatory and punitive damages, the Amended Complaint requests that the "original foreclosure claim . . . be set off for recoupment." (Am. Compl. at 25.) To the extent that this is a request for some kind of injunctive relief from the State Defendants related to the outcome of the Foreclosure Action, Winters is clearly seeking relief for past harms and has not alleged any "ongoing violation of federal law" as required for application of the *Ex parte Young* exception. *Rowland*, 494 F.3d at 95. The *Ex parte Young* exception is not available to "a plaintiff who merely asserts she has suffered discrete acts of past discrimination." *Blamah v. New York*, No. 7:19-cv-9234, 2020 WL 1812690, at *5 (S.D.N.Y. Apr. 8, 2020); *see also JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 340 (E.D.N.Y. 2014) (plaintiff seeking declaration that he was previously denied due process did not raise any ongoing violations of federal law which would permit the court to provide it with prospective relief); *Scott v. Crossway*, 2022 WL 16646531, *8 (N.D.N.Y. 2022), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. 2023) ("[p]laintiff appears to be asking only for retrospective relief—that this Court determine that [the Judge]'s Decision and Order was incorrect, contrary to law, and/or unconstitutional"). Therefore, as the requested relief is purely retrospective, Winters' claims against the State Defendants are barred by the Eleventh Amendment, and the *Ex parte Young* exception is inapplicable.

Accordingly, all claims in the Amended Complaint asserted against the State Defendants are barred by sovereign immunity and are therefore dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### B. Judicial Immunity

The claims against Judge Adams and Judge Coschignano—whether brought against them in their official capacity or individual capacity—are also barred by the doctrine of judicial immunity.

It is well-established that judges have absolute judicial immunity from suit for judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *accord Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) ("Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.'" (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985))). "The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *See Brady v. Ostrager*, 834 F. App'x 616, 618 (2d Cir. 2020) (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). This absolute "judicial immunity is not overcome by allegations of bad faith or malice" nor can a judicial officer be deprived of immunity "because the action he took was in error . . . or was in excess of his authority." *Mireles*, 502 U.S. at 11, 13 (1991) (internal quotation marks and citations omitted); *accord Davis v. Gillespie*, No. 22-cv-6207, 2023 WL 5002553, at *5 (E.D.N.Y. Aug. 4, 2023) ("Judicial acts—even if they are alleged to have been done maliciously or corruptly—are not subject to civil liability.").

Winters' claims against Judge Adams and Judge Coschignano all concern official actions they took during the Foreclosure Action and corresponding eviction proceedings. (*See* Am. Compl. at 22, 37.) Accordingly, judicial immunity bars those claims. *See Sage-El v. Tully*, No. 15-cv-5606, 2015 WL 6455242, at *2 (E.D.N.Y. Oct. 26, 2015) ("To the extent [the] plaintiff seeks to bring claims against the judges involved in his state court proceedings his claims must be dismissed, as judges have absolute immunity for their judicial acts performed in their judicial

16

capacities."). These claims are barred even to the extent that they are brought against the State Court Judges in their individual capacities. *Kellogg v. Nichols*, 149 F.4th 155, 159–60 (2d Cir. 2025) (affirming absolute judicial immunity from suits against state court judge defendant in his individual capacity).

Accordingly, the claims against Judge Adams and Judge Coschignano are barred by judicial immunity and are therefore dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.    Claims Against Ciaccio

Like the claims against Judge Adams and Judge Coschignano, the claims against Ciaccio are also barred by the doctrine of judicial immunity. Although Ciaccio failed to assert judicial immunity as a defense, the Court may raise the issue *sua sponte*. *See Gordon v. First Franklin Fin. Corp.*, No. 15-cv-0775, 2016 WL 792412, at *3 (E.D.N.Y. Feb. 29, 2016) ("Lack of subject matter jurisdiction . . . may be raised at any time by a party or by the court *sua sponte*.").

### A.  Judicial Immunity

Judicial immunity extends beyond judges to law clerks and court referees. *See e.g., Wilson v. Wilson–Polson*, 446 Fed. App'x. 330, 331 (2d Cir. 2011) (immunity bars procedural due process claims against a New York State Family Court referee); *Witcher v. Moriber*, No. 21-cv-6168, 2022 WL 1085297, at *2 & n.1 (E.D.N.Y. Apr. 11, 2022) (finding allegations of New York State Family Court referee's negligence or recklessness insufficient to overcome judicial immunity); *Renner v. Stanton*, No. 13-cv-01676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (relying on *Wilson* to conclude that "a court appointed referee is similarly entitled to absolute immunity for her official acts"). "The law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties."

17

*Rose v. Knipel*, No. 21-cv-786, 2022 WL 1105491, at *3 (E.D.N.Y. Apr. 13, 2022) (citation omitted); *Norley v. HSBC Bank USA*, No. 03-cv-2318, 2003 WL 22890402, at *9 n.4 (S.D.N.Y. Dec. 9, 2003) (applying absolute immunity to referee because "absolute judicial immunity has been extended to individuals performing duties 'closely associated with the judicial process'").

Here, Ciaccio was appointed to serve as a substitute referee by Order of Reference entered May 16, 2022 in the Foreclosure Action. (*See* Ciaccio Decl., Ex. A, ECF No. 58-3). Accordingly, he is properly treated as a judicial officer for purposes of this action and therefore has absolute immunity from Winters' claims against him, all of which concern his actions undertaken to advance the Foreclosure Action, including initiating the foreclosure action, selling the Property, and recording various documents.[7]

Accordingly, the claims against Ciaccio are barred by judicial immunity and dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Because the Court lacks subject matter jurisdiction over these claims, it need not reach the arguments raised by Ciaccio in his motion to dismiss the claims against him under Rule 12(b)(6).

## III.      Claims Against the Law Firm Defendants

The Law Firm Defendants move for dismissal on the basis that the Court lacks subject matter jurisdiction over the claims against them under the *Rooker-Feldman* doctrine.[8]

---

[7] *See, e.g.*, Am. Compl. at 26 ("On April 28, 2023 the premises . . . was sold by attorney Anthony Charles Ciacco [sic], The sale is voided because the legal Trustee is the person who has standing to execute the power of sales clause in the deed of trust."); *id*. at 28 (the Law Firm Defendants and Ciaccio's "actions in initiating a foreclosure and the sale of the premises . . . when they lack standing has damaged the plaintiff . . . ."); *id*. at 30 ("The [Law Firm Defendants] and Attorney Anthony Charles Ciacco [sic] have caused to be recorded various documents including an unlawful foreclosure which constitutes slander of title . . .").

[8] The Fink Defendants and Baum filed separate motions seeking dismissal on similar grounds. Accordingly, the Court addresses these motions together in this section.

Specifically, the Law Firm Defendants contend that the Amended Complaint seeks relief from the Foreclosure Action, which Defendant Baum commenced in 2008 on behalf of a non-party, Bank of New York. (*See* Fink Mot. at 5–7; Baum Mot. at 5–8.) The Law Firm Defendants move for dismissal on the additional grounds that the Amended Complaint is barred by res judicata and collateral estoppel, and that it fails to state any plausible claims against them.

As explained below, to the extent that this action attempts to challenge the State Court's Judgement of Foreclosure and Sale, the Amended Complaint's claims against the Law Firm Defendants are barred by the *Rooker-Feldman* doctrine and dismissal is proper pursuant to Rule 12(b)(1). Additionally, however, these claims are barred by res judicata and collateral estoppel, are time-barred, and/or fail to state a claim pursuant under Rule 12(b)(6).

### A.  The Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine bars federal courts from exercising "jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)). The doctrine, intended to be applied narrowly, "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

*Rooker-Feldman* bars federal courts from reviewing not only claims that were already raised in the state court action but also claims that were not raised but are nonetheless "inextricably intertwined" with the state court judgment. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 86–87 (2d Cir. 2005). The doctrine applies when four requirements are met: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused

19

by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced. *Id.* at 85. The first and fourth requirements are "procedural," while the second and third requirements are "substantive." *Id.* While all four requirements must be met to preclude jurisdiction, "the second requirement— that the plaintiff complains of an injury *caused* by a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive." *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018) (emphasis in original). As relevant here, courts in this Circuit "have held consistently that efforts to upset a state court judgment of foreclosure are barred by the *Rooker-Feldman* doctrine." *Ozuzu v. Greenpoint Mortg. Funding*, No. 19-cv-3783, 2020 WL 5658776, at \*5 (E.D.N.Y. Sept. 23, 2020); *see also Ceccarelli v. Morgan Stanley Priv. Bank, N.A.*, No. 25-443-cv, 2025 WL 2992528, at \*2 (2d Cir. Oct. 24, 2025) (summary order) (affirming dismissal under *Rooker-Feldman* of claims challenging foreclosure action); *Jeffreys v. Deutsche Bank Tr. Co.*, No. 22-3059, 2024 WL 482776 (2d Cir. Feb. 8, 2024) (summary order) (same).

Here, the procedural requirements of *Rooker-Feldman*—that the federal-court plaintiff lost in state court and that the state judgment was rendered before the district court proceedings commenced—are satisfied. Winters lost in State Court, as shown by the State Court's Judgment of Foreclosure and Sale, which was rendered in 2019, well before these district court proceedings commenced on October 24, 2024.[9, 10]

---

[9] "*Rooker-Feldman* requires the federal court plaintiff to have been a party to the state court proceeding, but it does not require the federal court defendants to have been party to the state court proceedings." *Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 246 (D. Conn. 2016).

[10] The Court does not discuss the 2024 State Action in this Discussion Section III.A because the state judgment in that specific action was rendered in March 2025, after the proceedings in this

Further, to the extent Winters seeks to challenge the State Court's Judgment of Foreclosure and Sale, the substantive requirements of *Rooker-Feldman*—a complaint of injuries caused by a state court judgment and an invitation to review and reject that judgment—are also satisfied. Whether framed as violations of due process, RICO, the FDCPA, or the various state law claims asserted in the Amended Complaint, Winters effectively alleges that Defendants were part of a conspiracy to allow a non-party, Bank of New York, to improperly obtain the Mortgage as well as the Judgment of Foreclosure and Sale in State Court. For example, the Amended Complaint alleges:

- "[T]he foreclosure lawsuit has a fatal flaw." (Am. Compl. at 28);

- "[Non-party CIT Group] . . . never provided a loan to the Plaintiff." (*Id.* at 42);

- "No loan was provided to the plaintiff and the defendants failed to file evidence on the record to prove a contract existed." (*Id.* at 27.)

- "[Non-party CIT Group] never registered the commercial instrument because they knew it was a financial asset to the Plaintiff, and that there was a breach of contract." (*Id.* at 14.)

- "The defendants filed a defective complaint [in State Court] listing a third-party lender as the plaintiff . . . ." (*Id.* at 24.)

- "[All Defendants] conspired together to strip the Plaintiff of his property and his right to due process." (*Id.* at 25.)

---

Court had commenced in October 2024. Accordingly, the March 2025 judgment of dismissal is not pertinent to the *Rooker-Feldman* analysis here.

- "[The Law Firm Defendants] violated the FDCPA, they do not meet the legal requirements to be considered a debt collector and therefore have no standing before the court." (*Id.* at 34.)

- "The plaintiff is a consumer as shown by the alleged mortgage loan and unlawful non-judicial foreclosure filed in State Court against the plaintiff's property." (*Id.* at 35.)

- "This case was assigned without consent from all parties and therefore the assignment was illegal, and the foreclosure is void because it was instituted by a party without standing." (*Id.* at 24.)

- "The actions of the defendants was or is conspiracy to deprive the Plaintiff of property without the administration of justice, in violation of Plaintiff's due process . . . ." (*Id.* at 38.)

- "Judge Christopher J. Coschiangnano [sp] render[ed] his decision without a findings of fact and a conclusion of law thereby stripping the plaintiff of his rights to due process." (*Id.* at 37.)

- "[The Law Firm Defendants and Ciaccio] have caused to be recorded various documents including an unlawful foreclosure which constitutes slander of title, and the plaintiff should be awarded resulting damages . . . ." (*Id.* at 30.)

- "The State of New York committed real estate deed fraud . . . The real estate deed fraud allowed the illegal mortgage lien to be placed against the Plaintiff's property . . . The state process is a violation of the Plaintiff's right to due process." (*Id.* at 20.)

- "The law firm, and the attorneys conspired with the state and the judges to commit real estate deed fraud and illegally foreclose on private property." (*Id.* at 19.)

- "On April 28, 2023, the [Property] was sold by [Ciaccio.] The sale is voided." (*Id.* at 26.)

22

Clearly, these allegations challenge the validity of the Judgment of Foreclosure and Sale because to resolve these issues, the Court would need to decide whether Bank of New York was the holder of a valid Note and Mortgage when it commenced the Foreclosure Action. These determinations were necessarily made by the State Court when it ordered the Judgment of Foreclosure and Sale, and the claims resting on such a determination are therefore barred by *Rooker-Feldman*. *See Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 289 (E.D.N.Y. 2024) ("Consequently, for Plaintiff to be vindicated on these claims, this Court would need to review the state court's determinations and ultimately decide that they were wrong; something *Rooker-Feldman* explicitly prohibits." (citing *Vossbrinck*, 773 F.3d at 427)); *In re Lunn*, No. 16-AP-2014, 2016 WL 5349726, at *7 (Bankr. W.D.N.Y. Sept. 23, 2016) (holding that *Rooker-Feldman* barred plaintiff's claims predicated on "irregularities in recording the various assignments of [her] mortgage" because such claims were caused by or arose out of a state court foreclosure judgment); *see also Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition, LP*, No. 21-cv-826, 2023 WL 8283148, at *4 (E.D.N.Y. Nov. 30, 2023) ("Because the state court must necessarily have ruled on the validity of the underlying loan and mortgage in rendering its decision, Plaintiff's request for this Court to review the same loan and 'nullify' it meets the substantive requirements of *Rooker-Feldman*"), *aff'd sub nom. Mendez v. Pretium Mortg. Credit Partners*, No. 23-8057-cv, 2024 WL 4691006 (2d Cir. Nov. 6, 2024).

"Moreover, it is well settled, that 'a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court.'" *Dekom v. Fannie Mae*, 17-cv-2712, 2019 WL 1259103, at *9 (E.D.N.Y. Feb. 26, 2019) (finding plaintiff's constitutional, RICO, FDCPA, and state law claims "inextricably intertwined" with the prior state court foreclosure action and therefore barred pursuant to *Rooker-Feldman*), *report and*

23

*recommendation adopted*, No. 17-cv-2712, 2019 WL 1403116 (E.D.N.Y. Mar. 28, 2019), *aff'd on other grounds*, 846 F. App'x 14 (2d Cir. 2021); s*ee also Boothe v. Rossrock Funds II LP*, No. 16-cv-900, 2017 WL 2271360, at \*6 (E.D.N.Y. May 23, 2017) (plaintiff's RICO claim barred by *Rooker-Feldman* where the claim was predicated on the allegedly "fraudulent transfer of [her] property" and defendants' "gross judicial misconduct" in the underlying foreclosure proceeding).

"For this reason, '[d]istrict courts in this circuit routinely cite *Rooker-Feldman* in dismissing RICO [and FDCPA] claims that attempt to raise alternative challenges to actions already rejected by the state courts.'" *Dekom*, 2019 WL 1259103, at \*9 (quoting *Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 423 n.2 (2d Cir. 2005); *see also Murphy v. GE Capital Asset Corp.*, 38 F. App'x 86, 86–87 (2d Cir. 2002) (affirming district court's finding that plaintiff's suit brought under RICO was barred by *Rooker-Feldman* where plaintiff "alleged that the defendants had fraudulently foreclosed a mortgage on his property by presenting fraudulent mortgage documents to the state courts") (summary order); *see also Craig v. Saxon Mortg. Servs., Inc.*, 13-cv-4526, 2015 WL 171234 at \*8 (E.D.N.Y. Jan. 13, 2015) (plaintiff's FDCPA claim barred by *Rooker-Feldman* doctrine where plaintiff alleged that defendants attempted to collect a debt they had "no authority to collect" and never had "lawful authority [or] possession of [plaintiff's] [n]ote"); *Quiroz v. U.S. Bank. Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at \*6 (E.D.N.Y. May 16, 2011) ("[A]ny FDCPA claim based on the falsity of the debt is barred by *Rooker-Feldman* because it would be [the state court's order of foreclosure and sale] which held [the creditor] had a valid right to collect the debt."), *report and recommendation adopted by*, No. 10-cv-2485, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).

So too, here, the allegations of the Amended Complaint—though couched as violations of various federal and state laws—hinge entirely upon the allegation that Winters did not have any

24

financial obligation to Bank of New York, and that Bank of New York lacked standing to foreclose on his property. These contentions were necessarily rejected by the State Court in the Foreclosure Action. Thus, because the allegations of the Amended Complaint concerning claims against the Law Firm Defendants are "inextricably intertwined" with the State Court's Judgement of Foreclosure and Sale, they are barred by *Rooker-Feldman*. *See Hoblock*, 422 F.3d at 86–87.

Notably, the fact that the Amended Complaint seeks compensatory and punitive damages does not bar the application of *Rooker-Feldman* where, as here, the alleged damages were "directly caused by the adverse judgment in the [f]oreclosure [a]ction . . . ." *Gifford v. United N. Mortg. Bankers, Ltd.*, No. 18-cv-6324, 2019 WL 2912489, at *6 (S.D.N.Y. July 8, 2019). In fact, the Amended Complaint repeatedly requests that the "original foreclosure claim . . . be set off for recoupment, and to have the assets cancel out the liabilities." (Am. Compl. at 15, 25, 29, 39, 41.) This attempt by Winters to undo the Judgment of Foreclosure and Sale is precisely what the *Rooker-Feldman* doctrine prohibits. *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010) ("Although plaintiff has labeled the relief in the complaint as seeking monetary damages [for injuries resulting from foreclosure judgment], it is abundantly clear that the whole purpose of this action is to stop and undo the foreclosure judgment."), *aff'd*, 446 F. App'x 360 (2d Cir. 2011).

In opposition to the Law Firm Defendants' Motions, Winters asserts that the "fraud" exception applies to his claims. (*See* Opp'n Fink Mot. at 11–12; Opp'n Baum Mot. at 4–5.) However, "there is no 'fraud-on-the-court' exception to the *Rooker-Feldman* doctrine." *Lorick v. Kilpatrick Townsend & Stockton LLP*, No. 18-cv-7178, 2021 WL 7906510, at *7 (E.D.N.Y. Aug.

20, 2021), *report and recommendation adopted*, No. 18-cv-7178, 2022 WL 1104849 (E.D.N.Y. Apr. 13, 2022).

> [A] plaintiff cannot rely on allegations that the state court judgment at issue 'was obtained fraudulently' to avoid application of the *Rooker-Feldman* doctrine[, since such an exception] 'would require the federal court[s] to review the state proceedings and determine that the . . . judgment was issued in error,' which *Rooker-Feldman* instructs we cannot do.

*Fiorilla v. Citigroup Glob. Mkts., Inc.*, 771 F. App'x 114, 115 (2d Cir. 2019) (quoting *Vossbrinck*, 773 F.3d at 427); *Lorick*, 2021 WL 7906510, at *7. Accordingly, a court has found that "the detail with which Plaintiff complains of the state-court proceedings" and "the fact that Plaintiff specifically name[d] . . . state-court litigation counsel" as a defendant demonstrated that plaintiff sought "to remedy harm caused by the state-court judgment . . . ." *Roberts v. Perez*, No. 13-cv-5612, 2014 WL 3883418, at *3 (S.D.N.Y. Aug. 7, 2014). Likewise, here, Winters' claims against the Law Firm Defendants who served as counsel in the Foreclosure Action seek to remedy alleged harms caused by the Judgment of Foreclosure and Sale and would require this Court to review and possibly re-adjudicate aspects of that Judgment—precisely what *Rooker-Feldman* prohibits.

Winters additionally notes that some circuits "expressly allow independent actions attacking prior state-court judgments entered by a state court that lacked subject-matter or personal jurisdiction." (*See* Opp'n Fink Mot. at 11–12; Opp'n Baum Mot. at 4.) However, Winters identifies no valid basis to support his assertion that the State Court lacked jurisdiction over him or the Foreclosure Action and provides no authority applying his reasoning to foreclosure actions such as this.

Accordingly, the Amended Complaint's claims against the Law Firm Defendants seek to undermine the State Court Judgment of Foreclosure and Sale. These claims are therefore barred under *Rooker-Feldman* and dismissed under Rule 12(b)(1).

### B. Failure to State a Claim

The Law Firm Defendants also move to dismiss the claims against them pursuant to Rule 12(b)(6) on grounds of res judicata, collateral estoppel, and for failure to state a cause of action. (*See* Fink Mot. at 5–16; Baum Mot. at 8–22.) Notwithstanding the Court's dismissal of these claims for lack of subject matter jurisdiction as addressed above, the Court examines each of these arguments in turn. The claims against the Law Firm Defendants are barred by the doctrines of res judicata and collateral estoppel, and Winters' federal claims fail to state a cause of action under Rule 12(b)(6).[11]

### i. Res Judicata

"The doctrine of claim preclusion, or res judicata, bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 n.1 (2d Cir. 2015) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). "A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). "In assessing the preclusive effect of a prior state-court judgment, [federal courts] apply the preclusion law of the state that issued the judgment." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*, 110 F.4th

---

[11] As discussed below, the Court declines to reach the issue of whether his state law claims state a cause of action. *See* Discussion Section III.C. *infra*.

106, 114 (2d Cir. 2024). As the prior decisions here—both the Foreclosure Action and the 2024 State Action—were rendered by New York state courts, New York's res judicata doctrine governs.

Under New York law, res judicata bars successive litigation of all claims where: (1) the previous action involved a judgment "on the merits" by a "court of competent jurisdiction"; (2) the previous action involved the "same parties" or those in privity with them; and (3) the claims asserted in the subsequent action were "actually litigated . . . [or] could have been raised in the prior litigation." *Beijing*, 110 F.4th at 114; *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 96 N.E.3d 737, 744 (N.Y. 2018). Pursuant to New York's transactional approach to res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). Claims are deemed to have been brought to a final conclusion even when they "could have been litigated [as defenses in the prior action], including defenses to a foreclosure." *Id*. at 421.

Applying the above standards, the Amended Complaint's claims against the Law Firm Defendants are barred by res judicata based on the prior 2024 State Action initiated by Winters in Nassau County Supreme Court. (*See Winters v. Rogers*, Index No. 612651/2024, Nassau County Supreme Court.) The 2024 State Action, which also challenged the validity of the Foreclosure Action, is essentially identical to this action before the undersigned.

The first res judicata requirement, that the previous action involved a judgment "on the merits" by a "court of competent jurisdiction," is satisfied here because Judge Rademaker's March 24, 2025 decision granting defendants' motion to dismiss with prejudice operates as a

28

judgment on the merits for res judicata purposes. *See Beijing*, 110 F.4th at 114 (affirming district court dismissal on res judicata grounds in light of state court judgment dismissing with prejudice); *Harris v. Beth Israel Med. Ctr.*, 367 F. App'x 184 (2d Cir. 2010) (summary order) (same); *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343 (S.D.N.Y. 2012) (affirming state court dismissal with prejudice noting that such a dismissal "constitutes a judgment on the merits").

The second requirement, the involvement of the "same parties" or those in privity with them, is also met. "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.'" *Modular Devices, Inc. v. Alcatel Alenia Space Espana*, No. 08-cv-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997)). Winters brought the 2024 State Action against all of the Law Firm Defendants at issue here, with the exception of Defendant Davidson Fink LLP.[12] However, Davidson Fink is in privity with attorneys Heather Rogers, Laura Burgess, and Richard Franco, who are employed at that firm and are sued in both actions for conduct taken in the scope of their employment. (Fink Mot. at 3; Am. Compl. at 23 ("The law firm Davidson Fink LLP, attorney Heather C.M. Rogers, attorney Laura A. Burgess, attorney Richard N. Franco, and attorney Steven J. Baum, failed to file the original contract with the court whereby the Court Lacked Jurisdiction to render judgment on the matter.").) "[A]n employer-employee or agent-[principal] relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued." *Araoz v. New Albany Co., LLC*,

_____

[12] Winters also names certain of the State Defendants as defendants in the 2024 State Action: Judge Adams and Judge Coschignano. While Winters did not name the State of New York as a defendant, the Court need not address this issue here as its res judicata analysis is focused on the Law Firm Defendants only.

No. 22-cv-0125, 2024 WL 866169, at *3 (E.D.N.Y. Feb. 29, 2024), *aff'd*, No. 24-748-cv, 2024 WL 4533333 (2d Cir. Oct. 21, 2024); *see also Krepps v. Reiner*, 377 F. App'x 65, 68 (2d Cir. 2010) (finding privity for claim preclusion purposes between employer-employee where employee was "acting within the scope of his employment in connection with the matter here at issue").

Finally, the third requirement, that the claims asserted in the subsequent action were "actually litigated . . . [or] could have been raised in the prior litigation," is also satisfied here. The complaint in the 2024 State Action asserts many of the same claims asserted here, including wrongful foreclosure, violation of the FDCPA, breach of contract, slander of title and infliction of emotional distress. (*See* 2024 State Action Complaint at 25–26.) The other claims in this action "could have been raised in the prior litigation" because they all rely on the same transaction and factual allegations regarding the Foreclosure Action and its enforcement. Winters' allegations in the Amended Complaint here and in the complaint in the 2024 State Action are at times identical. (*See* State Action Compl. at 8 ("The original debt was zero because the Plaintiff's financial assets were exchanged for FED's promissory notes in an even exchange"), Am. Compl. at 16 (same); State Action Compl. at 12 ("All the monthly payments made on a fake loan plus interest for the number of years payments were made . . . ."), Am. Compl. at 15 (same).)

Accordingly, res judicata bars the Amended Complaint's claims against the Law Firm Defendants on the basis that Winters had already initiated a nearly identical action in State Court in 2024, in which such claims actually were raised or could have been raised.[13]

---

[13] The Law Firm Defendants incorrectly argue that res judicata applies on the basis of the Foreclosure Action. (*See* Fink Mot. at 7; Baum Mot. at 9.) Res judicata cannot apply on the grounds of the Foreclosure Action alone because it did not involve the "same parties" or those in

30

### ii. Collateral Estoppel

As with res judicata, application of collateral estoppel is determined by the law of the state in which the prior decision was rendered. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). "Under New York law, collateral estoppel bars re-litigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Swiatkowski*, 745 F. Supp. 2d at 168 (quoting *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007)); *accord Hoblock*, 422 F.3d at 94. This doctrine prevents a party from re-litigating an issue "clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." *See Wilson v. HSBC Bank, USA*, No. 16-cv-8405, 2018 WL 1449204, at *10 (S.D.N.Y. Mar. 22, 2018) (internal quotation marks and citation omitted; ellipsis in original). "Collateral estoppel generally does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 350 (E.D.N.Y. 2010) (citing *United States v.*

---

privity with them. According to the Second Circuit, "an attorney is in privity with his client for purposes of res judicata only where the attorney 'had a personal interest in the subject of the earlier action.'" *Gurevitch v. Emerald Green Prop. Owners Ass'n, Inc.*, No. 23-cv-8156, 2025 WL 642347, at *7 (S.D.N.Y. Feb. 27, 2025) (quoting *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022) (finding attorney who represented his client in a foreclosure action was not in privity with that client because he "did not have a cognizable personal interest in the subject of the state foreclosure action.")). "This is the case even where the plaintiff's later claim is predicated on allegations that the counsel to the party in the prior action and that party itself were involved in misconduct." *Id*.

The Law Firm Defendants were not a party in the Foreclosure Action. Although they represented Bank of New York —the lending institution that brought the action—they do not claim any personal interest in the Foreclosure Action as necessary to establish privity. *Gurevitch*, 2025 WL 642347, at *7. Rather, the Law Firm Defendants incorrectly contend that their attorney-client relationship with Bank of New York can alone establish privity. (*See* Baum Reply at 9.)

*Mendoza*, 464 U.S. 154, 158 (1984)). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991).

Notably, in cases involving prior foreclosure actions, "[c]ourts in this Circuit have found that a plaintiff's federal-court claim is precluded by a state-court judgment in a foreclosure action when the plaintiff has alleged, in federal court, that the defendants acted improperly in connection with the making, validity or enforcement of the underlying mortgage." *George v. Nationstar Mortg., LLC*, No. 16-cv-261, 2017 WL 3316065, at *7 (E.D.N.Y. Aug. 2, 2017) (citing *Fequiere v. Tribeca Lending*, No. 14-cv-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (holding that where the plaintiff attacked the validity of the underlying mortgage and the propriety of the foreclosure action in state court, she could not recast the same factual allegations to support claims under racketeering and state statutes in federal court)). These courts have reasoned that the federal court plaintiff could have raised the claims concerning improper conduct and/or fraud in the making, validity, or enforcement of the underlying mortgage as a defense to in the underlying foreclosure action. *See, e.g.*, *Solomon v. Ocwen Loan Servicing, LLC*, No. 12-cv-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); *Hinds v. Option One Mortg. Corp.*, No. 11-cv-6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (res judicata barred fraud claim premised on "allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud"

32

because the claims "arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"); *see also Swiatkowski*, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings.").

Courts in this Circuit have applied both res judicata and collateral estoppel to federal court actions challenging state court foreclosure judgments. *See Yeiser*, 535 F. Supp. 2d at 424–26 (finding that collateral estoppel bars plaintiff's federal court action challenging its foreclosure judgment); *Jones v. Select Portfolio Servicing, Inc.*, No. 23-cv-7772, 2024 WL 2494769 (E.D.N.Y. May 24, 2024) (finding that both res judicata and collateral estoppel bars plaintiff's federal court action challenging its foreclosure judgment); *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142 (E.D.N.Y. 2016) (same).

Applying these standards, the Amended Complaint's claims against the Law Firm Defendants are barred by collateral estoppel based on *both* the Foreclosure Action and the 2024 State Action. As explained above, Winters' claims are predicated on allegations that Bank of New York lacked standing in the Foreclosure Action due to an allegedly fraudulent Mortgage and Assignment. (*See generally* Am. Compl.; Opp'n Baum Mot. at 15–16.) The first factor of collateral estoppel, that "the identical issue necessarily was decided in the prior action and is decisive of the present action," is met. To resolve these claims, the Court would need to review the validity of the Mortgage and Assignment—determinations necessarily made by the State Court both (1) in the Foreclosure Action, when it entered the Judgment of Foreclosure and Sale, and again (2) in the 2024 State Action, when it granted defendants' motion to dismiss the complaint. For example, the Amended Complaint asserts an FDCPA claim based on "the alleged

33

mortgage loan and unlawful non-judicial foreclosure filed in State Court against the plaintiff's property." (Am. Compl. at 35.) Similarly, with respect to the RICO claim, the Amended Complaint alleges that the Law Firm Defendants "acted individually and/or by through their officers and directors, [to] file fraudulent foreclosure, false letters, and other false documents with courts and county clerks to promote their scheme to defraud the plaintiff and fictionalize foreclosures in the name of [a] party without standing." (*Id.* at 40.) Yet, Winters' claims regarding the validity of the Mortgage and its subsequent Assignment were already decided by the State Court in the Foreclosure Action and the 2024 State Action.

Regarding the second factor for collateral estoppel, Winters has not shown that he lacked a full and fair opportunity to litigate those issues in either the Foreclosure Action or the 2024 State Action. *See Khandhar*, 943 F.2d at 247. Indeed, Winters could have raised the causes of action asserted in the Amended Complaint here as defenses or counterclaims in either of the prior actions—and indeed, he did so in his opposition briefing in the 2024 State Action. *See Winters v. Rogers*, Index No. 612651/2024, Dkt. No. 20 (Winters' Opp'n, Oct. 23, 2024) (opposing dismissal motion on the basis of standing to sue and that the complaint pled plausible claims under Section 1983, the APA, wrongful foreclosure, breach of contract, slander of title, infliction of emotional distress, among other theories).

Thus, collateral estoppel precludes Winters from re-litigating here his challenges to the making, validity, or enforcement of the underlying Mortgage, whether characterized as claims under federal or state law. *See Rutty v. Esagoff*, No. 17-cv-1485, 2017 WL 2178432, at *2 (E.D.N.Y. May 17, 2017) (finding that "[b]y virtue of the doctrine of collateral estoppel, plaintiff is precluded from claiming that the foreclosure was improper . . . and the myriad other factual issues" that were adjudicated in the foreclosure proceeding in connection with claims under the

34

FDCPA and state law); *Caldwell*, 701 F. Supp. 2d at 351 (barring plaintiff's claims where they would require a federal court to revisit issues already necessarily decided in state court); *see also Fallica v. Bank of Am.*, 22-cv-1297, 2023 WL 4824434, at *11 (E.D.N.Y. Jun. 1, 2023) (finding RICO and state law claims barred by collateral estoppel where such claims were based on the validity of the mortgage and defendants purported fraudulent activity in ratifying the mortgage— all issues that plaintiff should have raised in the foreclosure action), *reconsideration denied*, No. 22-cv-1297, 2023 WL 5237365 (E.D.N.Y. Aug. 15, 2023).

Accordingly, the Amended Complaint's claims against the Law Firm Defendants are barred by collateral estoppel and are therefore dismissed under Rule 12(b)(6).

### iii.    *Winters' Federal Claims Fail to State a Cause of Action*[14]

Notwithstanding the foregoing jurisdictional and preclusive grounds for dismissal, the claims set forth in the Amended Complaint should also be dismissed because they are time-barred and/or fail to state a claim under Rule 12(b)(6). The Court addresses the federal claims below and, for reasons stated in Discussion Section III.C. *infra*, declines to reach the state claims.

### 1.    *Tucker Act Claim*

The Amended Complaint's allegation that Defendants violated the Tucker Act fails as a matter of law because the Tucker Act only applies to claims against the United States. *See* 28 U.S.C. § 1491; *Yeboah v. U.S. Bank, N.A.*, 3:24-cv-351, 2025 WL 101575, at *7 (D. Conn. Jan.

---

[14] The federal claims are: Count One, violation of the Tucker Act, 28 U.S.C. § 1491; Count Two, violation of due process pursuant to 42 U.S.C. § 1983; Count Four, violation of the Administrative Procedures Act of 1946; Count Five, conspiracy pursuant to 42 U.S.C. §§ 1985, 1986; Count Nine, violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; Count Fourteen, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (*See* Am. Compl. at 53–55.)

15, 2025) ("[T]he Tucker Act only relates to actions against the United States." (citing *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009))). Accordingly, because the federal government is not a defendant in this action, Winters' Tucker Act claim is dismissed.[15]

### 2.  42 U.S.C. § 1983

The Amended Complaint's Section 1983 claim, which invokes Winters' due process rights, has no merit in light of the fact that none of the Law Firm Defendants are state actors. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law.") Section 1983 imposes liability on, and creates a right of action against, anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Davidson Fink is a private law firm, and the remaining Law Firm Defendants are private individuals. As such, the Section 1983 claims against them are dismissed.

While the Amended Complaint alleges that the Law Firm Defendants acted under color of state law as attorneys (*see* Opp'n. Fink Mot. at 16–17), "it is well-established that private attorneys, despite their status as officers of the court, do not act under color of state law for purposes of section 1983," *Livingston v. Singer*, No. 01-cv-6979, 2003 WL 22952739, at *2 (S.D.N.Y. Dec. 16, 2003); *Henry v. Logan*, No. 07-cv-789, 2010 WL 883674, at *3 (W.D.N.Y. Mar. 5, 2010) ("A lawyer representing a client, by virtue of being an officer of the court, is not acting under color of state law within the meaning of section 1983."); *Bates v. N.Y.C. Transit*

---

[15] To the extent Winters intended to bring a claim under the Little Tucker Act, 28 U.S.C. § 1346, that claim would also fail for the same reason. The Tucker Act, 28 U.S.C. § 1491(a)(1), and the "Little Tucker Act," *id.* § 1346(a)(2), "provide subject matter jurisdiction for non-tort claims against the United States" for money damages. *Adeleke v. United States*, 355 F.3d 144, 151 (2d Cir. 2004) (quotations omitted).

*Auth.*, 721 F. Supp. 1577, 1581 (E.D.N.Y. 1989) ("[T]he fact that [the defendant] is an officer of the court (by virtue of his being an attorney), does not support the allegation that his actions are under color of state law."). Accordingly, the Section 1983 claims against the Law Firm Defendants fail as a matter of law.

### 3.   Administrative Procedure Act ("APA") Claim

The Amended Complaint asserts an APA claim without asserting any specific supporting allegations. (*See* Am. Compl. at 53.) However, the APA applies only to federal agencies. *See* 5 U.S.C.A. § 701; *New York et al. v. Atlantic States Marine Fisheries Comm'n*, 609 F.3d 524, 527 (2d Cir. 2010) (holding that plaintiffs are not entitled to APA review because defendant is not a federal agency within the meaning of the APA). As none of the named Defendants are federal agencies, the APA claim is dismissed.

### 4.   Conspiracy Claim Under Sections 1985 and 1986

The Amended Complaint alleges that "[t]he actions of the defendants was or is a conspiracy to deprive the Plaintiff of property without the administration of justice, in violation of the Plaintiff[']s due process of law under Title 42 U.S.C. 1983 (Constitutional injury), 1985 (Conspiracy) and 1986 ('Knowledge' and "Neglect to Prevent' a U.S. Constitutional Wrong)." (Am. Compl. at 28.)

A plaintiff alleging a conspiracy claim pursuant to Section 1985 must plead: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). Thus, "to state a valid conspiracy claim under 42 U.S.C. § 1985(3), plaintiff[] must,

among other things, plausibly allege the existence of a conspiracy to deprive [him] of [his] constitutional rights." *Kiryas Joel All. v. Village of Kiryas Joel*, 495 F. App'x 183, 190 (2d Cir. 2012). Importantly, "Section 1985(3) provides no substantive rights itself; rather, it merely provides a remedy for violation of the rights it designates." *Friends of Falun Gong v. Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003) (citing *Great Am. Fed. Sav. & Loan Assoc. v. Novotny*, 422 U.S. 366, 372 (1979)); *Hanley v. Nassau Health Care Corp.*, No. 10-cv-3884, 2013 WL 3364375, at *8 (E.D.N.Y. July 3, 2013) ("Plaintiff has failed to allege the violation of any constitutional right, and therefore her section 1985(3) [claim] must be dismissed.").

Here, as discussed in Discussion Section III.B.iii.2 *supra,* the Amended Complaint fails to allege an underlying claim for a constitutional violation pursuant to Section 1983. Therefore, it fails to state a Section 1985 conspiracy claim. *See Hanley*, 2013 WL 3364375, at *8; *see also Nasca v. County of Suffolk*, No. 05-cv-1717, 2008 WL 53247, at *8 n.8 (E.D.N.Y. Jan. 2, 2008) ("Plaintiff's conspiracy claim under 42 U.S.C. § 1985 must also fail because there is no underlying Section 1983 violation.") (collecting cases).

Furthermore, the Section 1986 claim also necessarily fails. Section 1986 provides for a cause of action for failure to prevent a Section 1985 conspiracy. 42 U.S.C. § 1986. As this Section is tied specifically to Section 1985, it does not set forth a general cause of action for failure to prevent any violation of Section 1983. *See Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996) (dismissing Section 1986 claim where complaint contained no allegation of Section 1985 violation); *accord Abdi v. Brookhaven Science Assocs., LLC.*, 447 F. Supp. 2d 221, 227 (E.D.N.Y. 2006). Because the Section 1985 conspiracy claim cannot survive the motion to dismiss, the claim pursuant to Section 1986 must also be dismissed.

Accordingly, both conspiracy claims are dismissed under Rule 12(b)(6) for failure to state a claim.

### 5. *FDCPA Claim*

The FDCPA claim is barred by the one-year statute of limitations governing such claims. *See* 15 U.S.C. § 1692k(d); *see also, e.g., Sanchez v. Ehrlich*, No. 16-cv-8677, 2018 WL 2084147, at *3 (S.D.N.Y. Mar. 29, 2018). "An FDCPA claim based on a foreclosure action accrues when the action is filed." *Gurevitch*, 2025 WL 642347, at *11. Further, "[t]he continued prosecution of a foreclosure . . . [action] is not a continuing violation under the FDCPA – if the same alleged misrepresentation is repeated in court filings, the claim accrues on the date of the initial representation." *Oliver v. U.S. Bancorp*, No. 14-cv-8948, 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015).

Winters commenced this action on October 24, 2024, alleging that the Law Firm Defendants have no standing to collect the debt. (*See* Am. Compl. at 34.) However, the Foreclosure Action commenced on February 25, 2008—more than sixteen years prior to the commencement of the instant action. Because Winters' claims against the Law Firm Defendants accrued as early as 2008, and no later than the date of the Judgement of Foreclosure and Sale on April 25, 2019, the FDCPA claim against the Law Firm Defendants is time-barred.

### 6. *RICO Claim*

The RICO claim is similarly time-barred. Civil RICO claims are subject to a four-year statute of limitations, which begins to run when the plaintiff discovers, or should reasonably have discovered, the alleged injury. *See Koch v. Christie's Intern. PLC*, 699 F.3d 141, 148 (2d Cir. 2012). "An injury is 'discoverable' when a plaintiff has constructive notice of facts sufficient to

create a duty to investigate further into the matter." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 525 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

Here, the claims in the Amended Complaint refer to the alleged "unlawful" activities of Defendants throughout the Foreclosure Action. (*See generally* Am. Compl.) Specifically, the Amended Complaint alleges that "[t]he Defendants acted individually and/or by through their officers and directors, [to] file fraudulent foreclosures, false letters, and other false documents with courts and county clerks to promote their scheme to defraud plaintiff and fictionalize foreclosures in the name of party without standing." (*Id.* at 40.) The Foreclosure Action commenced on February 25, 2008, and resulted in a Judgment of Foreclosure and Sale on April 25, 2019. At the very latest, Winters should have discovered his alleged injuries related to the Foreclosure Action no later than the date of the Judgment of Foreclosure and Sale—more than five years prior to the commencement of the instant case on October 24, 2024. *See St. Maarten v. J.P. Morgan Chase, N.A.*, No. 20-cv-762, 2021 WL 2217503, at *5 (E.D.N.Y. Jan. 14, 2021). Accordingly, the RICO claim is time-barred.

### C. State Law Claims

In the absence of original subject matter jurisdiction over any claims, the Court may not exercise supplemental jurisdiction over the remaining state law causes of action.[16] *See Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 398–9 (2d Cir. 2017) ("[A] district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction. It follows that when a district court correctly dismisses all federal claims for lack of subject-matter

---

[16] The state claims are: Count Three, fraudulent concealment; Count Six, wrongful foreclosure; Count Seven, lack of standing; Count Eight, breach of contract; Count Ten, slander of title; Count Eleven, wrongful eviction; Count Twelve, wire fraud; Count Thirteen, "failure to establish agency"; and Count Fifteen, infliction of emotional distress. (*See* Am. Compl. at 53–55.)

40

jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims."); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction.").

However, in the event this Court has original jurisdiction over any of Winters' claims, having determined that none of the federal claims survive Defendants' Motions to dismiss, the Court concludes that retaining jurisdiction over Winters' state law claims is unwarranted. *See* 28 U.S.C. § 1367(c)(3) (A district court "may decline to exercise supplemental jurisdiction over a claim [where it] has dismissed all claims over which it has original jurisdiction . . . ."). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law . . . [I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Accordingly, the Amended Complaint's state law claims are dismissed without prejudice.

## IV.     Leave to Amend

Although Winters did not request leave to amend, the Court may grant such leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, a district court may

deny leave to amend when an "amendment would be futile because the problem with the claim 'is substantive . . . [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-cv-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alteration in original)).

Applying these standards, because the Court dismisses the claims set forth in the Amended Complaint for lack of subject matter jurisdiction as well as under the preclusion principles of res judicata and collateral estoppel, any amendment would be futile. There are no additional factual allegations Winters could offer that would cure the substantive defects in his claims. Accordingly, Winters is denied leave to file a second amended complaint.

## CONCLUSION

For the reasons discussed above, Defendants' Motions (ECF Nos. 41, 57, 58, 59) are resolved as follows.

First, the State Defendants' Motion is granted pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction under Eleventh Amendment immunity and judicial immunity. In light of the application of judicial immunity, these claims are dismissed with prejudice.

Second, the claims against Ciaccio are barred by judicial immunity, and the Court sua sponte dismisses these claims with prejudice for lack of subject matter jurisdiction under Rule 12(b)(1). Accordingly, Ciaccio's Rule 12(b)(6) Motion is dismissed as moot.

Third, the Law Firm Defendants' Motions are granted under Rule 12(b)(1) because this Court lacks subject matter jurisdiction over the claims by application of *Rooker-Feldman*. In the alternative, to the extent that this Court has jurisdiction, these claims are dismissed with prejudice under Rule 12(b)(6) as barred under the doctrines of res judicata and collateral estoppel.

In light of these rulings, all federal claims against the State Defendants, Ciaccio, and the Law Firm Defendants are dismissed. Because there are no viable federal claims, this Court declines to exercise supplemental jurisdiction over Winters' state law claims against the State Defendants, Ciaccio, and the Law Firm Defendants under 28 U.S.C. § 1367(c). These claims are therefore dismissed without prejudice.

The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

The Clerk of Court is respectfully directed to mail a copy of this Order to Winters at his address of record and to note such mailing on the docket. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).


Dated: Central Islip, New York
       March 13, 2026


                               *Nusrat J. Choudhury*
                                NUSRAT J. CHOUDHURY
                                United States District Judge